Good morning. Our last argument this morning is United States v. Smith. We read here from the appellate. Thank you, Judge. I'm Rob Ridenour. I'm here on behalf of Mr. Lee Smith. I'm here to argue that the district court made two mistakes in this case. The first was deciding that there was sufficient probable cause at all to move forward at all to the good faith analysis that the court underwent. I would argue that the good faith basis was not supported and that the warrant itself was bare bones. The affidavit was bare bones and did not require, did not support official belief. Secondly, we believe that the court erred by failing to hold a Frank's hearing. And I'll explain more about that as we go along. The case begins with an affidavit by a Osage County deputy receiving information that two different places had reported wheelbill thefts. One of them was apparently some pipe on a trailer. The other was a motor. They, the, the reports themselves made no mention of the defendant, made no mention of this pickup that was, which the court allowed a searching device to be affixed to. However, the Osage County deputy said, I have a, that he has a confidential informant and said that the he says this informant takes him to a location that the informant says is where Mr. Smith takes things in order to stolen equipment. However, the officer made no effort. Okay. So the deputy says that the confidential informant took him to a location. The location is unnamed. No corroboration or investigation was done by the officer to say that this, this location was related in any way to Mr. Smith. Secondly, when they get there, well, didn't, didn't the confidential informant say that this is where Mr. Smith keeps the stolen property. That's true. That is what the unnamed unverified confidential informant said. But my, my point more so is that there was no, it all came from the confidential informant judge. Not only did the confidential informant say this is the location, the officer could have investigated that judge. There's any number of ways we see this in other cases, you know, this is the address, this is the utilities. We don't even know if it was a house, an apartment or an open field. So yes, that did come from the informant also coming from the informant apparently. Well, okay. So the informant took him to this place at that place. They don't find a pipe. They don't find this motor. They find a motor apparently that had not been reported stolen. There was apparently an oxygen tank that also they say had been confirmed stolen. There's no mention of why in the affidavit. They believed that it was stolen. And in some that is kind of the, they, they is the officer, right? Yes. Yes. That he, that it, the affiant says that it was confirmed to be stolen. That's the oxygen tank, right? He says it was confirmed to be stolen. There was never any mentioned previous to now that my client had stolen any oxygen tank. So the fact that there's an oxygen oxygen tank there in a location, again, that's not been tied to the defendant other than by the CIs word, that doesn't amount to anything. Finally, what about, what about the red pickup that had been previously used by Smith that was at that location? Well, judge, it says that it was used by Smith, but there's no verification of that. There's no, you know, title search. There's no proof that any, any ever received a ticket in it. There's no proof that anybody ever saw him in it. In fact, when you read the affidavit, it just says a red pickup that was previously used by Smith was also at this location. The affiant makes no effort to verify that or tell the magistrate more importantly, why this supposedly was used by Mr. Smith. So yes, sir, there was a pickup. Apparently there was a pickup there. There's no proof that it in any way was associated with Mr. Smith. Well, can't it? Well, it says in the affidavit that the red pickup was previously used by Smith. So it does say that. So if, if we have to determine the source of that, don't we assume that it came from the confidential informant? Well, we assume it must have judge there's no other citation included. And that kind of gets me to actually what doesn't happen in, there's no items that were stolen there that were reported stolen. There was no proof cited that tied Mr. Smith to the property. Well, again, the oxygen tank was confirmed to be stolen by whom judge. It doesn't say that it may have been again, the informant just said by Mr. By the affiant telling us this, I was assuming when you say confirmed, I thought it was the affiant that was confirming it. Perhaps judge, but just like judge Murphy said, we're having to assume a lot of things, which first I'd like to talk about good faith. There is this entire affidavit is devoid of any probable cause. It's so bare bones that the official before you go down that road, you take offense that the affidavit did not talk about the reliability of the confidential informant, right? Yes. Okay. What would you have? I mean, how specific do they have to get according to you and these affidavits? Well, judge, the cases include a number of things. Then cases can include either the confidential informant standard drug case that previously made buys for the, for the officers or that on three previous occasions, their information had proved reliable in this equation. Can they just say in the affidavit that, that, that, that this confidential informant is a reliable one. Judge particular. Yes, they could say that. However, then it would be up to the magistrate to make a decision if that's sufficient. And they do that in this case, because they put a little off a letter R it's put CRI, but we know what that means. We mean, we know that means a confidential reliable informant. Again, we're assuming that judge, yes, we can assume that. However, reliability is not something we can just give a name to. There has to be some proof that, that, that proves that. And so reliability comes from what experienced officers realize they have to include. They have to include things that show why they're reliable. They can't just assert it to the, to the magistrate. There has to be some that is the reliability or the veracity or the basis of knowledge and none of that. And so we have a situation where there is no corroboration. Okay. We have no proof that this officer did anything other than go to some place that this confidential informant said was, was associated with Mr. Smith. So we have no corroboration in that case. And Gates would tell us, boy, we need some good, we need some good reliability or veracity based upon this, this informant. Why, why should we believe this informant when there's nothing else corroborating it? And that's what the case law calls for. And what if, what if I'm a magistrate or a state court judge and I receive an app, an application for a search warrant and the affidavit says that the officer received information from a confidential informant and who said that defendant Joe Chabot is dealing crack out of a house on Villa and 24th street. And the officer then goes to the vacant house at 24th and Villa street. And it looks like there are all sorts of indicia of, of, of dealing crack out of that house. Would there have been sufficient corroboration in that scenario to say that there was probable cause to believe that there was a contraband to be found at that house at 24th and Villa? Well, there's some similarities here judge, because you have though an actual address. And so that is a specific thing. Then you also have an officer going on their own to the location and seeing these things. And then you raised indicia judge. I don't see any indicia other than, you know, we have a motor there that the, the affidavit doesn't even say is stolen. There's a pump there. There's some various other oil field supplies there. And then there's a oxygen tank that is confirmed stolen. So in your had some sort of corroboration, there's indicia of drug dealing. He also had a specific address to go to. And so in that case, your judge, your affiant is relying upon some information that is verifiable by going out there. So that verifies his affidavit or excuse me, his CI, and it corroborates the information that the CI gave. Okay. So let me expand on it a little bit. And that is Joe Schmoe's house. Joe Schmoe has a Lexus and I'll tell you where the Lexus is. And they asked for a tracker warrant to put on Joe Schmoe's Lexus. Now, wouldn't that, is there a probable cause? And if so, how is that different from your case? Because there's no informant said that that house is Joe Schmoe's house. It could have been anybody's. It could have been my house. When we talk hypotheticals, it's pretty hard for me to explain why mine may match up to that. I instead, I'm only able to tell you that here we have information at a location that other than the, excuse me, the CI's words, there is no corroboration whatsoever. And then we know that he has not on the prima facie, on the face of the warrant, doesn't the four corners does not have probable cause. He's not been able to corroborate any of this other than going out to this place. But what does he also know? He knows that he omitted the criminal history of the CI. That was the thing that really kind of blew my mind is that I filed this motion to suppress. I say, well, it appears like the guy might have criminal information, but I didn't know. And so then the prosecutor files a motion saying he does in fact have confidence. He does have criminal history. The prosecutor claims that he's going to bring the guy to testify to the court. If you look in the record, it's clear that the court expected to hear this officer come forth and say, why did I omit this criminal history here? Why would criminal history affect the presence of probable cause? In other words, I can see that the magistrate saying, well, there was no corroboration or there was corroboration, but simply, you know it seems to me that the presence of probable cause depends on whether or not there was sufficient corroboration by bringing the inspector to the oil field where there's allegedly stolen oil field equipment, not based on the history of this informant being confidential. So maybe he was a mass murderer. Maybe he was the biggest liar in the world, but I don't know how criminal history per se, which may be, he was arrested, you know, once 20 years ago for, you know, selling an ounce of marijuana. Why would that affect the presence of probable cause? Well, judge, now you're talking about an, again, a different story because we have wholly uncorroborated other than the CRI took him to this location. CRI says this is stolen, this is stolen. So why the criminal history in that situation is important because we say, we assume that the magistrate knows that they have criminal history. Was it murder, judge? Would that change a person's mind? Was it perjury? Would that change a person's mind? And so we are to the point, judge, where I am in front of the appeal court arguing that this guy's criminal history oughtn't matter. We haven't even had the hearing. You talk about Avery. There was a, there was a thanks hearing. So they know, the court know, district court know then. So he have here, the magistrate doesn't know what the criminal history was. The district court didn't know what the criminal history was. And now I'm in front of the appellate court with still no knowledge. And that's why we have Franks. We have to preserve the sanctity of the process in order to ensure that we don't have a confidential informant that may have, and with the criminal history, and this is Franks. If he had had a perjury conviction, would that have changed the magistrate's mind? Perhaps if he had had a oil field theft, would that change his mind? That might give explanation for why he might know these stolen things are. So we have just a myriad of, and when you don't make the officer come and testify about why he omitted this criminal history, which is an experienced officer. And apparently according to the government, and again, this is not in the evidence, apparently he knew he had criminal history. Why would you omit that? So those are the things that I've raised thus far. If the court has any questions now, I'd answer them. Otherwise, I'd like to reserve the remainder of my time. Thank you. We're ready to hear from the government. Your honors, and may it please the court. My name is Scott Proctor. I'm the Northern District of Oklahoma Indian Country Fellow, as well as an assistant U.S. attorney. Your honor, I'd like to start just based on something in the reply brief. And I fear that perhaps due to my association with this case and a bit of rhetorical flourish and an attempt to provide context, I may have escaped what really is the core of this case. And I'd like to use this opportunity to refocus on what is the core, which I think carries the day for us, which is the affidavit, good faith, and this Frank's hearing issue. So with that, your honor, I may actually swap around based on what my friend across the aisle had to say and start with this Frank's hearing issue. Now, it's important, I think, for the court to understand how we got to where we were in the district court. And I'd refer the court initially to docket 17, which I think is in the record three, four, page three, page four. Mr. Ridenour filed the brief asking for it to quash the evidence or to suppress the evidence. He also requested a Frank's hearing. The same day, the judge below in a minute order granted the Frank's hearing. So in our initial response, we took the Frank's hearing as something on the schedule. Upon further review, we decided that perhaps Mr. Ridenour, or sorry, Mr. Smith's brief had not carried the substantial preliminary showing required under Frank's to protect against things like using a Frank's hearing as a discovery tool. And so we filed a supplemental brief in which we encouraged the court to focus within the four corners of the affidavit and to no longer hold the Frank's hearing. The court over Mr. Smith's objection decided not to hold the Frank's hearing. And I think on page volume one, page 99 mentioned that the initial granting was inadvertent. And also during the hearing on the Frank's motion, I think several times we encouraged the district court to focus within the four corners of the warrant. So that is why in the first brief, you have some proffers, which I encourage this court to disregard. And then in the supplemental brief, we refocus on the four corners of the affidavit. Now, your honors, I'd like to now switch back to why I believe there's probable cause here. Your honors, it goes back to first principles. The Illinois v. Gates, Massachusetts v. Upton, and some other cases, especially in the Tenth Circuit, emphasize that probable cause is a practical, common sense analysis designed to find a substantial basis for a warrant. And from what I've found, there's typically two paths there. One is, as defense, Mr. Smith's brief points out, is the U.S. v. Long approach. A reliable informant is described as reliable. That evidence buttresses their comments, their evidence, and that can lead to sufficient probable cause. The alternative is what I believe is in the Danhower case, where it's a corroboration, where if you don't know about this informant, it could be anonymous, as it was in Gates, and as it wasn't quite in Upton, but just the- Well, the problem is sort of a historic problem for me, and that is the throwing around of these phrases. A confidential informant is a different animal from a mere tipster. Yes, Your Honor. Is that right? It is, Your Honor, certainly. And so we allegedly have a confidential informant here. Yes, Your Honor. We have no indication that he is a reliable informant, except for the use of the word reliable in describing him. Yes, Your Honor. Now, I would point, Your Honor, to what I believe is the Danhower approach to this informant, which is the corroboration approach. Now, why the term reliable was used, I'm not going to peek behind the affiance mind in that case. However, it could potentially refer to the fact that the person is reliable because they provided information that corroborated what they said. And, becomes reliable upon further investigation that corroborates what he told you initially. Yes, Your Honor. That's not what reliability means. Reliability means past working with this individual, giving you reliable information, he has a history of veracity, all those things. That is a confidential informant. Yes, Your Honor. And that is clearly absent from this affidavit, Your Honor. However, that's why I think what's particularly important here is not to sort of dissect the warrant in the way warranted against in Gates. It's to take it under its totality because you need to read this entire warrant or affidavit in its, sort of, with its different parts mixing together to understand, I think, what could be inferred to come from the informant and what could be inferred to come from a separate source. Okay, under the most generous construction of the affidavit, based on the totality of the affidavit, what, what is the, what fact is there to say that that Chevrolet truck was even his? This is the Maroon 2004 truck, Your Honor? Yeah. Your Honor, I would say it's this. What you have is a statement in paragraph four that an investigation into this has led to the connection between Mr. Smith and the truck. Now, obviously, that's largely, I apologize. Okay, so you see what you're referring to is a paragraph that says, during an investigation, the sheriff's, the deputies, compiled information from whom we were left to guess regarding the Chevrolet operated by Lee Smith. We don't know if, if it was lent to Lee Smith. We don't know if he owned it. We don't know if he was one of 20 drivers, and we don't know the source of that compilation of information and the use of the vehicle by whom, not even, it doesn't even say by Mr. Smith, much less a fact that tells us why Inspector York or Investigator York thought that he was using the vehicle to commit crimes, and that is what the, the warrant is for, is for his Chevrolet truck. If there was the greatest compelling evidence that he was the biggest thief of oil-filled equipment in the state of Oklahoma has ever known, the warrant was for his truck, and the, the, the clause in that paragraph is all you have. What fact is there in that clause that tells us that, that he had any legitimate reason to think that the truck was his? Your Honor, first, I believe that we are supposed to read the warrants in the eyes as a layman and someone first in law enforcement to read them. Please do. So I think two points, Your Honor. The one is, I agree this is operated by Lee Smith and the use of the vehicle was for the commission of these crimes. I understand why that is an awkward phrasing. However, the close proximity and context of that paragraph I think pretty clearly links that investigation, or would, I should say. We could reason, it could easily be inferred that those were meant to work together in unison to indicate not only did he use it, but he used it in the commission of the crime. And then secondly, Your Honor, I, I, what fact is there to say, okay, let's say you're right. What fact is there? What, what was that compilation of information, which is the, the clause that links, that qualifies both of those provisions? What, what was that compilation of information to a layman to be based on? What was that compilation based on? Your Honor, I, I, I'm not sure if I have a basis for the compilation of the investigation beyond the fact that the officer has averred that an investigation took place, which I think is worth some weight. But I think there's evidence in the affidavit that the investigation did in fact take place, which, which I also think is particularly valuable if we're going to look at the good faith possibility in the, from the Roach case. Because what we see here is a mention of a vehicle that there was an investigation. And then when we see in the first paragraph, there's some pretty specific information about that vehicle. There's a VIN number, there's a year, there's a make, there's a color, there's a model. And then there's also in the, I believe it's page 59 of the record, a reference to where it's going to be found, which is 231 Bacon Run. And so I, what I think we ultimately have is an officer averring to an investigation, possibly could have, certainly could have provided more information, but did, there is evidence within the warrant read as a whole that that investigation took place. And so I think it can be reasonably inferred, as it seems two judges did, both the state judge and the tribal judge, that this vehicle was sufficiently linked to Mr. Smith for this warrant. Okay, let me probe that. You relied on Roach. Now in Roach, my recollection is that Judge Lucero said that the good faith, he found that there was not probable cause to believe that, even though it was verified in the affidavit that this was the defendant's residence, he found that there was no probable cause and he found, and he found the good faith exception, Leon applied only because the affidavit made it unequivocally clear that one of multiple verification techniques had been utilized to link the defendant to that residence. And so in here, the problem is I don't see that there was any verification through any technique other than the clause that he compiled information. I don't see compiled information through an informant, through, you know, checking tag titles at the Department of Public Safety. I don't see any verification technique unlike Roach. Roach cuts against you to me. Your honor, I think it's, it's which side of investigation you're looking at. So I actually think that this case and Roach are sort of two sides of the same coin. So in Roach, there's an investigation and it lists a list, you know, I think it was title checks and bills and some other things. And the ultimate point was, well, one of these was used and that's enough for good faith. Here, we similarly have a statement. There was an investigation, but I think those other points, namely the VIN number, especially that came from somewhere. There's the make model. I mean, perhaps I don't know who's a truck expert. I'm certainly not one, but to know it's a 2004 Chevy pickup with that VIN number involves some sort of, like there's some payout at the end of it of an investigation. So the details are not there of how they got there, but the fruits of that investigation are there, which indicates it happened, which I think, like I said, is the flip side of the coin. Now, the other thing I'll, I'll mention your honor, and I think this is, this is key to the probable cause finding given our warrants. So if this is not convincing, I would understand going to good faith. There's the reasonable inferences that are mentioned in cases such as I believe the, the big low case, where when you're looking at a nexus, you need to take into account sort of not just what the officer says and some of the other things, but the nature of the evidence, the necessity of say, concealing it or moving it, and the reasonable inferences a magistrate could make. So once this vehicle is linked through an undescribed investigation leading to the fruits described, namely the VIN, make model, a year, and the location where you're going to find it, you've got a reasonable inference as defense that Mr. Smith's briefs have said, and we do too. Oil equipment is big and it's out in fields. And so if you're going to take it, you've got to take it somewhere else. And so no one's carrying that thing without, I mean, it's feasible that someone used some other means to move it, but a truck is the logical way to do it. And so that I think is what really has to, that reasonable inference, given the context that these judges found themselves in, which I think is important. And I understand that probable cause ultimately is an objective standard. It is, it is viewable as such. It is an objective standard, but the language in the cases, the practical considerations of everyday life, those sorts of things, common sense, I don't think there's a way to completely divorce it from the context in which these judges are looking at it. And these are judges in a rural area where there's just not a lot of people. And if they see a truck, they may not even, I would think in a small area, you kind of know who drives which truck. It's not necessarily like in a city. So those reasonable inferences, I freely admit, will have to carry a lot of water. And if this court ultimately decides they're more on the hunch upon hunch side than the reasonable inference side, I would pivot to good faith. And I think what I said earlier about Roche is what, and that's the And to the extent that that can be overcome, it seems to be in this attempt to bring about Frank's hearing. And I think, I apologize, your honors, I don't remember which person brought this up, but the criminal history is sort of ancillary. The Avery case makes clear that it's not necessary. And I would like to say that I think there's a parallel here. The Avery case involved an undescribed criminal history of a confidential informant who did make controlled buys. Here, while there are no controlled buys, it's the warrant. You can very, I think, reasonably infer that this person, this offend, is in fact someone who knows enough about what appears to be theft, concealment of stolen property, some other things to have you fairly close to it. So I don't think that this, the generally unsavory character of this informant would have been a mystery to the judges who reviewed it below, which is why I don't think that's a silver bullet leading to a Frank's hearing. And to the extent that I haven't seen anything else, except I think one brief moment in Mr. Smith's brief below that the council of there to there being sufficient facts for Frank's hearing, which I don't think meets the affidavits or other reliable statements by witnesses. And with that, your honor, I see my time is up. The time is up. Excuse me. I would ask Mr. Proctor. Was officer investigator York, was he in the group of investigators that put the device tracking device on the defendant's car? I, I would, I would have to double check the record, your honor. I'm quite confident though he is just because that's a small department. So I can't imagine most folks would not have been involved. Okay. Does that factor in any way that the affiant is also the person who executes it? Does that factor into our application of the good faith exception? Your honor, if it does, I've not thought through that. I apologize. Well, if we're looking, if we're looking at whether or not the, the officer, whoever executed the warrant reasonably relied on the affidavit, which I think is the language that defendant's using here. Now we have to know whether the officer executing the warrant even saw the affidavit. I think so, your honor. But again, unfortunately I had not thought through this question. Well, that is unfortunate. Is the record going to demonstrate whether or not the participant in the attachment of this device or do we just assume he was? Number two, does the record indicate whether or not, if the record is unclear on that, does the record indicate whether the non-York investigators had the warrant and had read it? Again, your honor, I'd have to go back through and check the, however. All right. All right. You don't know. You don't know. Yes, sir. As far as I can see in the record, I didn't see a return on the warrant, which would tell us who executed it. Again, your honor, I did not remark on the, on the, we're ready to hear rebuttal. Thank you, judge. Had there been a Frank's hearing, then we'd know the answers to these questions. Judge Murphy, the ones that you've had to use word assume for, we have no answers to those questions. So that's one of the reasons why we should have had a Frank's hearing because we would just state that as one of the reasons why you needed to have a Frank's hearing. Well, not your specific issue, sir. No, but that once you raise these questions, what we don't have is a Frank's hearing so that this, this officer can explain why he omitted this criminal history. Here's the problem with Frank's hearing. You have to the propriety of a Frank's hearing. I believe that was established, judge. And I would think that it would be necessary in order for you to preserve this issue that you said, well, we need to know who signed off on this warrant. We didn't know who was there. We didn't know if they even had the warrant. And we didn't know whether, you know, what happened there. Well, I didn't throw all those in judge, but what I threw in was the fact that we did not know that there was any criminal history of this affiant or excuse me, this, this informant until I filed a motion that made them say it. And we still, again, do not know what that criminal history is. We are forced to assume. So what do you say about good faith? Doesn't good faith solve the problem for the government here? Good faith. So didn't roach judge, but they had a minimal nexus there that was established by the government's investigation that showed that that lived at that address. There is no independent examination of, by the officer of why this location was associated or the red pickup that was there was associated with my client. This is something that any reasonable officer can do. And so this officer not doing it knows that he should have done it. He knows there's no corroboration. And he furthermore knows that he's got criminal history. The CI has criminal history. And for some reason, he doesn't tell us what it is. So not only does good faith, not save it. If the court decides good faith does save it, we still need to have that Frank's hearing because we have some sort of reason that this officer omitted it and the government given every opportunity that like I said, the district judge even expected it, but they had every opportunity and never, ever, ever divulge that information to us. Thank you. Your, your, your Frank's hearing survives. We apply the way on exception, because I think that gives us information that this court doesn't have, or the district court doesn't have. We need given, we have made a strong showing that any information you get the Frank's hearing going to reverse a ruling by this court, the Leon exception applies because it can go to that good faith judge. Because we know more about the knowledge. That's it. Pardon me, sir. I'm sorry. If our decision resolved that Leon applies, the good faith exception applies, then you can't explore it in the Frank's hearing because it has been resolved. It would probably tell us that the officer under Leon then had been violative of the good, excuse me, he was reckless in his omission of this information. That's why he's the key. What do you think would happen to the if we hold a Frank's hearing and we go into this issue, we would be undercutting a decision made by the 10th Circuit Court of Appeals and you can't reverse the 10th Circuit Court of Appeals. I don't think that we can decide. We don't know what his faith is judge. We just don't. We know that he excluded something. Hypothetically, as I said, if you get a ruling from us, you know what it was. It was good. I appreciate that. Well, I understand. I understand. I'm just trying to sort through whether under different scenarios, whether or not the Frank's issue will survive or it doesn't survive. I think that because of the mystery of what happened and the information that it still has a bearing on good faith judge. Okay, but if you really want, you know better than I. Thank you, counsel. That's a good way to close. Case is submitted.